# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

|  |  |
|---|---|
| Infogation Corporation, | Case No. 2:24-cv-1027 |
| Plaintiff, | Jury Trial Demanded |
| v. |  |
| Mapbox, Inc., |  |
| Defendant. |  |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Infogation Corporation ("Infogation" or "Plaintiff") hereby files this Original Complaint for Patent Infringement against Mapbox, Inc. ("Mapbox" or "Defendant"), and alleges, upon information and belief, as follows:

## THE PARTIES

1.    Infogation Corporation is a corporation organized and existing under the laws of the State of Texas with its principal place of business at 1409 Constellation Drive, Allen, Texas 75013.

2.    Upon information and belief, Defendant Mapbox, Inc. is a corporation organized and existing under the laws of the state of Delaware that maintains an established place of business at 1133 15th St NW Suite 825, Washington, DC 20005. Defendant can be served on its registered agent in Texas, CT Corporation Systems located at 1999 Bryan Street, Suite 900, Dallas, TX 75201.

## <u>JURISDICTION AND VENUE</u>

3.     This Court has personal jurisdiction over Mapbox because they committed and continues to commit acts of infringement in this judicial district in violation of 35 U.S.C. §§ 271(a). In particular, on information and belief, Mapbox has made, used, offered to sell access to, and/or sold access to the accused Mapbox Products and Services in the Eastern District of Texas.

4.     On information and belief, Mapbox is subject to the Court's jurisdiction because it regularly conducts and solicits business, or otherwise engages in other persistent courses of conduct in this judicial district, and/or derives substantial revenue from the use, sale, and distribution of goods and services, including but not limited to the accused Mapbox Products and Services provided to individuals and businesses in the Eastern District of Texas.

5.     On information and belief, Mapbox infringes the patents-in-suit in the Eastern District of Texas, at least, by making, using, offering to sell access to, and/or selling access to the accused Mapbox Products and Services in the Eastern District of Texas, and its making, use, offering to sell access to, and/or selling access to the Mapbox System.

6.     On information and belief, the accused Mapbox Products and Services are made, used, sold and offered for sale throughout the State of Texas and this judicial district directly by Mapbox, or through retail agents, including Walmart and BestBuy retail stores located in the Eastern District of Texas among others.

7.     On information and belief, Mapbox's customers located in the Eastern District of Texas have obtained access to and used the accused Mapbox Products and Services while located in the Eastern District of Texas.

8.     The Court has personal jurisdiction over Mapbox at least because it has continuous business contacts in the State of Texas and in the Eastern District of Texas; Mapbox has engaged in business

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                                    2

activities including transacting business in the Eastern District of Texas and purposefully directing its business activities, including the sale or offer for sale of the Mapbox Products and Services to the Eastern District of Texas to aid, abet, or contribute to the infringement of third parties in the Eastern District of Texas.

9.      This Court has personal jurisdiction over Mapbox because, inter alia, Mapbox, on information and belief: (1) has committed acts of patent infringement in this Eastern District of Texas; (2) maintains a regular and established place of business in the Eastern District of Texas; (3) has substantial, continuous, and systematic contacts with this State and the Eastern District of Texas; (4) owns, manages, and operates facilities and mobile mapping vehicles in this State and the Eastern District of Texas; (5) enjoys substantial income from its operations and sales in this State and the Eastern District of Texas; (6) employs Texas residents in this State and the Eastern District of Texas, and (7) solicits business using the Mapbox Products and Services in this State and the Eastern District of Texas.

10.     Upon information and belief, Mapbox maintains permanent employees within the district, from where they regularly conduct Mapbox's regular and established business. Moreover, Mapbox owns and deploys a fleet of mobile mapping vehicles, which have, and have had, a regular and established presence in major cities throughout this district. The vehicles are operated by Mapbox employees and/or contractors who work entirely at Mapbox's direction and under their control. The existence of Mapbox's mobile mapping vehicles within this district are steady, uniform, orderly, and methodical such to create, maintain, and sell Mapbox's goods and services (e.g., maps, mapping services, and mapping devices).

11.     Both a substantial portion of the value of Mapbox's products within the United States and the integrity of its products themselves is dependent upon the regular and established presence of

Mapbox's mobile mapping vehicles within this District. Indeed, Mapbox's place of business is, in fact, inclusive of the major cities within this District. Mapbox's products include a representation of major cities throughout this District. Mapbox markets important components of their map products and services as including detailed diagrams of the roadways and structures within major cities such as within this District. Moreover, Mapbox's mobile mapping vehicles themselves are highly identifiable with the "Mapbox" branding on the sides of the vehicles in large, colorful font. Upon information and belief, this branding is specifically intended to draw attention to Mapbox's regular presence in this district, the availability of their infringing products for sale within this district, the quality of their infringing product within this district, and the infringing methods used to create and maintain their infringing products.

12.    Thus, every aspect of Mapbox's products is tied to the major cities within this district. It creates its product in, and using, this district. It sells and markets its products in this district. It has a regular and established presence of employees within this district, for the purpose of creating and marketing its product. Indeed, the presence of those employees is a necessary aspect of the creation and maintenance of its products.

13.    Further, upon information and belief, Defendant has and uses its customers and their digital device[1] as authorized map agents in the Eastern District of Texas (collectively "Mapping Agents"). Through its Mapping Agents, "Mapbox receives location data when a Mapbox customer's end users uses a licensed application that incorporates Mapbox mobile SDKs and the end user has authorized the licensed application's use of the end user's device location via their mobile phone or device operating system."[2] Defendant has a regular and established place of business in this

---

[1] https://visionfund.com/insights/mapbox-success-in-navigation-mapping-industry-sector (article with Mapbox founder explaining tis use of costumer's devices for mapping data).
[2] https://www.mapbox.com/legal/legal-faq (Mapbox Legal FAQ).

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                              4

District through the Mapping Agents acting as agents. Defendant manifests assent to the Mapping Agents that they shall act on Defendant's behalf and subject to its control, and the Mapping Agents manifest assent or otherwise consent to act. Defendant maintains "interim control" over the Mapping Agents' work, in which they rely on interactions and Defendant's instructions within the scope of their work.

14.     Upon information and belief, the contracts between Defendant and the Mapping Agents establish (1) Defendant has the right to direct and control the Mapping Agents, (2) Defendant has manifested consent that Mapping Agents act on its behalf, and (3) the Mapping Agents have consented to act on behalf of Defendant.[3]

15.     Upon information and belief, Defendant has established and ratified the Mapping Agents' places of business because the contracts affect how they provide location data to Defendant.

16.     The Mapping Agents in this district have fixed geographical locations. They are "regular" and "established" because they operate in a "steady, uniform, orderly, and methodical manner" and are sufficiently permanent. These locations are "of the defendant" because Defendant has contractual rights with them.

17.     Defendant ratifies the Mapping Agents' locations because it exercises interim control over the Mapping Agents' activities and uses their location data and are being performed at and by Mapping Agents' locations in this District.

18.     Mapbox also has regular and established physical presences in this District from its use of Mapbox Third Party Sub-processors to provide the Mapbox products/services.[4] For example, one of those Sub-processors is Amazon Web Services ("AWS"), a hosting provider.[5] AWS is a cloud

---

[3] https://www.mapbox.com/legal/tos (Mapbox Terms of Service for use of its services)
[4] https://www.mapbox.com/legal/subprocessors
[5] *Id.*

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                          5

computing platform that offers a variety of services, including: Computing, Storage, Content delivery, Databases, Analytics, Machine learning, and Security, identity, and compliance.[6] AWS has a presence in this District in  Tyler, Texas, through a strategic partnership with Tyler Technologies.[7] Tyler Technologies and AWS have worked together since 2019 to provide cloud services to the public sector.[8] AWS' servers in this District, including, Tyler Texas, are physical locations leased by Mapbox for it to provide Mapbox products/services.

19.    Defendant also has regular, physical presences of Defendant employees in this District conducting Defendant's business. Defendant maintains a regular and established place of business at the Defendant defined places and separate areas at the Mapping Agents' locations by the regular, physical presence of its employees.

20.    As shown below, Defendant has employees in the Eastern District of Texas:



*See* https://www.linkedin.com/company/mapbox/people/?facetGeoRegion=102748797
(screenshot of Mapbox's LinkedIn page for employee in Frisco, TX).

21.    As shown above, these employees are located in this District in Frisco, Texas. Their locations within the Eastern District of Texas are important to the business performed and defendant had

---

[6] https://aws.amazon.com/what-is-aws/#:~:text=Amazon%20Web%20Services%20(AWS)%20is,more%20agile%2C%20and%20innovate%20faster.
[7] https://www.tylertech.com/about-us/partners/technology-partners#:~:text=Amazon%20Web%20Services%20(AWS)&text=The%20relationship%20allows%20Tyler%20to,innovativ e%20citizen%20services%20and%20programs.
[8] https://www.tylertech.com/about-us/partners/technology-partners#:~:text=Amazon%20Web%20Services%20(AWS)&text=The%20relationship%20allows%20Tyler%20to,innovativ e%20citizen%20services%20and%20programs.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                                    6

intention to maintain some place of business in the Eastern District of Texas in the event any employees decided to terminate their residences as a place there.

22. Defendant's employees also not merely possess inventory. Their use in the Eastern District of Texas part of Defendant's services to its Eastern District of Texas customers, a job that falls on these employees. When sample products or inventory arrive at these employees' places of businesses, they then visit local customers to deliver or show the samples.

23. Defendant has further solicited salespeople in public advertisements to cover the challenged venue area and preferred that those employees live in their assigned sales area. Their locations within the Eastern District of Texas are important to the business performed and defendant had intention to maintain some place of business in the Eastern District of Texas in the event any employees decided to terminate their residences as a place there.

24. Defendant has regular, physical presences of Defendant employees in this District conducting Defendant's business. Defendant maintains a regular and established place of business at the Defendant defined places and separate areas by the regular, physical presence of its employees.

25. Venue is proper pursuant to 28 U.S.C. §§ 1391(b), (c), (d) and/or 1400(b), at least because Mapbox, has committed acts of infringement in this judicial district, and has regular and established places of business in this judicial district.

26. Venue is proper in this District as to Defendant pursuant to at least 28 U.S.C. §§ 1391(c)(2) and 1400(b).  As noted above, Defendant maintains a regular and established business presence in this District. *See Seven Networks, LLC v. Google LLC,* 315 F. Supp. 3d 933, 966 (E.D. Tex. 2018); *see also In re Monolithic Power Sys., Inc.,* 50 F.4th 157, 160 (Fed. Cir. 2022); *see also AGIS Software Dev. LLC v. Google LLC*, No. 2:19-CV-00361-JRG, 2022 WL 1511757, at *9 (E.D. Tex. May 12, 2022); *IOT INNOVATIONS LLC, Plaintiff, v. MONITRONICS INTERNATIONAL, INC., d/b/a*

*BRINKS HOME*, Defendant., No. 2:22-CV-0432-JRG-RSP, 2023 WL 6318049, at *5 (E.D. Tex. Sept. 11, 2023), *report and recommendation adopted sub nom. Iot Innovations LLC v. Monitronics Int'l, Inc.*, No. 222CV00432JRGRSP, 2023 WL 6300560 (E.D. Tex. Sept. 27, 2023).

27.    Furthermore, venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391(b), 1391(c) and 1400(b) because, among other things, Defendant is subject to personal jurisdiction in this Judicial District, regularly conducted business in this Judicial District, certain of the acts complained of herein occurred in this Judicial District, and they are not residents in the United States and may be sued in any judicial district.

## **PATENTS-IN-SUIT**

28.    Plaintiff is the sole and exclusive owner, by assignment, of U.S. Patent 10,107,628 (the "'628 Patent; U.S. Patent 8,406,994 (the "'994 Patent") and U.S. Patent 6,292,743 (the "'743 Patent") (hereinafter collectively referred to as the "Patents-in-Suit").

29.    By written instruments executed, Plaintiff is assigned all rights, title, and interest in the Patents-in-Suit.  As such, Plaintiff has sole and exclusive standing to assert the Patents-in-Suit and to bring these causes of action.

30.    The Patents-in-Suit are valid, enforceable, and were duly issued in full compliance with Title 35 of the United States Code.

31.    The Patents-in-Suit have been cited in over 200 patents issued to well-known industry leaders, including industry giants Toyota, Google, Microsoft, Garmin, Honda, Mapbox, Aol, Mapquest, Facebook, Verizon, Sprint, Cisco, Samsung, NEC, Nokia, Alcatel, Pioneer, Phillips, Lucent, IBM, Intel, Motorola, Sony, Toshiba and Kaarta.

32.    The Patents-in-Suit each include numerous claims defining distinct inventions.  No single claim is representative of any other.

33.     The priority date of the '628 Patent is at least as early as August 11, 2007. It generally relates to the area of Global Positioning System (GPS), and, in particular, to navigation on non-linearly scaled maps and how to display such non-linearly scaled maps with proper colors on a display screen. As of the priority dates, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.  Indeed, the Patents-in-Suit overcame a number of specific technological problems in the industry and provided specific technological solutions.

34.     The priority date of the '994 Patent is at least as early as November 7, 2008. The '994 Patent generally relate to the area of Global Positioning System (GPS). In particular, the present invention is related to electronically generated map with one or more objects therein being realistic. As of the priority dates, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.  Indeed, the Patents-in-Suit overcame a number of specific technological problems in the industry and provided specific technological solutions.

35.     The priority date of the '743 Patent is at least as early as January 6, 1999. It generally relates to a mobile navigation system and apparatus, and more particularly to a distributed navigation system having a wireless connection to a server for calculating optimal routes using real-time data. As of the priority dates, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.  Indeed, the Patents-in-Suit overcame a number of specific technological problems in the industry and provided specific technological solutions.

36.     The claims of the Patents-in-Suit are patent eligible under 35 U.S.C. § 101, 102, 103, and 112, as reflected by the fact that three different Patent Examiners all agreed and allowed the Patents-in-Suit over extensive prior art as disclosed and of record during the prosecution of the Patents-in-Suit.  *See Stone Basket Innov.,* 892 F.3d at 1179 ("when prior art is listed on the face of a patent, the examiner is presumed to have considered it") (citing *Shire LLC v. Amneal Pharm., LLC,* 802

F.3d 1301, 1307 (Fed. Cir. 2015)); *Exmark Mfg. v. Briggs & Stratton,* 879 F.3d 1332, 1342 (Fed. Cir. 2018).

37.     After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiners allowed all of the claims of the Patents-in-Suit to issue.  In so doing, it is presumed that Examiners used their knowledge of the art when examining the claims.  *See K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Patent Examiners had experience in the field of the invention, and that the Patent Examiners properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

38.     The claims of the Patents-in-Suit are novel and non-obvious, including over all non-cited art that is merely cumulative with the referenced and cited prior art.  *See* 37 C.F.R. § 1.56(b) (information is material to patentability when it is not cumulative to information already of record in the application); *see also AbbVie Deutschland GmbH v. Janssen Biotech,* 759 F.3d 1285, 1304 (Fed. Cir. 2014); *In re DBC,* 545 F.3d 1373, 1382 (Fed. Cir. 2008).  Likewise, the claims of the '628 Patent are novel and non-obvious, including over all non-cited contemporaneous state of the art systems and methods, all of which would have been known to a person of ordinary skill in the art, and which were therefore presumptively also known and considered by the Examiners.  *See, e.g., St. Clair I.P. Consultants v. Canon, Inc.,* 2011 WL 66166 at *6 (Fed. Cir. 2011); *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002); *In re Koninklijke Philips Patent Litigation,* 2020 WL 7392868 at *19 (N.D. Cal. 2020); *Standard Oil v. American Cyanamid,* 774 F.2d 448, 454 (Fed. Cir. 1985) (persons of ordinary skill are presumed to be aware of all pertinent prior art).

## THE ACCUSED INSTRUMENTALITIES

39.    Upon information and belief, Mapbox makes, sells, advertises, offers for sale, uses, or otherwise provides an apparatus and method for navigation systems covered by the Patents-in-Suit, including but not limited to, the Mapbox Navigation SDK for in-vehicle routing, wayfinding, and infotainment, the Mapbox MapGPT AI Assistant, the Mapbox Autopilot Map system, the Mapbox Navigation SDK for mobile applications, the Mapbox for EV solution, and the Mapbox Matric API systems and platforms,  including all augmentations to these platforms or descriptions of platforms.

40.    Collectively, all the foregoing is referred to herein as the "Accused instrumentalities."



*See* https://www.mapbox.com/navigation-automotive#navigation **(screenshot of Mapbox's website describing and showing the Mapbox Navigation SDK system and platform).**

## COUNT I
### Infringement of U.S. Patent No. 10,107,628

41.    Plaintiff incorporates the above paragraphs by reference.

42.    Defendant has been on actual notice of the '628 Patent at least as early as the date it received service of the Original Complaint in this litigation.

43.    Plaintiff or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '628 patent, thus the damages period begins at least as early as six years prior to the date of service of the Original Complaint in this litigation.

44.    Defendant manufactures, sells, offers for sale, owns, directs, and/or controls the operation of the Accused Instrumentalities and generates substantial financial revenues and benefits therefrom.

45.    Defendant has directly infringed and continues to directly infringe the claims of the '628 Patent. As exemplary, Claim 1 is infringed by making, using, importing, selling, and/or offering for sale the Accused Instrumentalities.   Defendant directly makes and sells the infringing Accused Instrumentalities at least because it is solely responsible for putting the infringing systems into service by directing or controlling the systems as a whole and by obtaining the benefits therefrom. More specifically, and on information and belief and as represented in the video found at https://youtu.be/TpsaBnfQVuM, with respect to the Accused Instrumentalities, Defendant:

- (i) practices and provides downloading from a network into a computing device an artistic map, the artistic map being non-linearly scaled and including various objects being exaggeratedly shown on the computing device to facilitate a user using the computing device to view and select one of the objects to navigate thereto in the artistic map, wherein the computing device is portable, equipped with navigation capability and provides a traveling guidance based on a geographical map, the artistic map is not used directly by the computing device for navigation, each of the objects is represented

by a plurality of points on a display of the computing device, and the geographical map is not being displayed on the display;

- (ii) practices and provides receiving in the computing device a selection on the one of the objects from the user as a selected object;

- (iii) practices and provides determining by the computing device a pair of coordinates for one of the points on the selected object;

- (iv) practices and provides transforming in the computing device the pair of coordinates to a physical point represented by a pair of latitude and longitude in the geographical map not being shown on the display, the points representing the selected object having different pairs of coordinates, but all of the different pairs of coordinates for the selected object corresponding substantially to the physical point when said transforming is performed;

- (v) practices and provides detecting a current location of the computing device in the geographical map; and

- (vi) practices and provides determining according to the geographical map a navigational direction from the current location to the one of the objects being selected; and

- practices and provides showing the navigational direction on the artistic map being displayed.

46.     Further on information and belief, Defendant directly uses the infringing Accused Instrumentalities at least because it assembled the combined infringing elements and makes them collectively available in the United States, including via its Internet domain web pages and/or software applications, as well as via its internal systems and interfaces.  Further, and on

information and belief, Defendant has directly infringed by using the infringing Accused Instrumentalities as part of its ongoing and regular testing and/or internal legal compliance activities.  Such testing and/or legal compliance necessarily requires Defendant to make and use the Accused Instrumentalities in an infringing manner.  Still further, Defendant is a direct infringer by virtue of its branding and marketing activities, which collectively comprise the sale and offering for sale of the infringing Accused Instrumentalities.

47.    As shown above, Defendant is making, using, and offering for sale the Accused Instrumentalities.

48.    Additionally, upon information and belief, Defendant owns, directs, and/or controls the infringing method operation of the Accused Instrumentalities.

49.    On information and belief, the infringement of the '628 Patent by Defendant will now be willful through the filing and service of this Complaint.  The '628 Patent is not expected to expire before July 26, 2033.

50.    In addition or in the alternative, Defendant now has knowledge and continues these actions and it indirectly infringes by way of inducing direct infringement by others and/or contributing to the infringement by others of the '628 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, infringing services for use in systems that fall within the scope of the claims of the '628 Patent. This includes without limitation, one or more of the Accused Instrumentalities by making, using, importing offering for sale, and/or selling such services, Defendant injured Plaintiff and is thus liable to Plaintiff for infringement of the '628 Patent under 35 U.S.C. § 271.

51.    Now with knowledge of the '628 Patent, Defendant induces infringement under Title 35 U.S.C. § 271(b).  Defendant will have performed actions that induced infringing acts that Defendant knew

or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc*., 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co*., 471 F.3d 1293, 1306 (Fed.Cir.2006) (*en banc* in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co*., 501 F.3d 1307, 1313, (Fed. Cir. 2007).

52.   Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd*., 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

53.   Defendant has taken active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused product to be used in an infringing manner. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

54.   In addition, on information and belief, and based in part upon the clear infringement by the Accused Instrumentalities, Defendant has a practice of not performing a review of the patent rights of others first for clearance or to assess infringement thereof prior to launching products and services.  As such, Defendant has been willfully blind to the patent rights of Plaintiff.

55.   The foregoing infringement on the part of Defendant has caused past and ongoing injury to Plaintiff.  The specific dollar amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '628 Patent.

56.   Each of Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

**COUNT II**
**Infringement of U.S. Patent No. 6,292,743**

57.   Plaintiff incorporates the above paragraphs by reference.

58.   Defendant has been on actual notice of the '743 Patent at least as early as the date it received service of the Original Complaint in this litigation.

59.   Plaintiff or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '743 patent, thus the damages period begins at least as early as six years prior to the date of service of the Original Complaint in this litigation, and up to is expiration on January 6, 2019.

60.   Defendant manufactures, sells, offers for sale, owns, directs, and/or controls the operation of the Accused Instrumentalities and generates substantial financial revenues and benefits therefrom.

61.   Defendant has directly infringed and continues to directly infringe the claims of the '743 Patent. As exemplary, Claim 15 is infringed by making, using, importing, selling, and/or offering for sale the Accused Instrumentalities.  Defendant directly makes and sells the infringing Accused Instrumentalities at least because it is solely responsible for putting the infringing systems into service by directing or controlling the systems as a whole and by obtaining the benefits therefrom. More specifically, and on information and belief and as represented in the video found at https://youtu.be/TpsaBnfQVuM, with respect to the Accused Instrumentalities, Defendant practices and provides a navigation system which:

- (i) practices and provides a navigation computer;

- (ii) practices and provides a wireless transceiver coupled to said navigation computer for connecting with a navigation server, said navigation server for calculating optimal routes based on real-time information, said optimal routes being formatted using a non-proprietary, natural language description;

- (iii) practices and provides a mapping database coupled to said navigation computer for reconstructing said optimal route from said non-proprietary, natural language description; and

- (iv) practices and provides a display screen coupled to said navigation computer for displaying said optimal route using said mapping database.

62. Further on information and belief, Defendant directly uses the infringing Accused Instrumentalities at least because it assembled the combined infringing elements and makes them collectively available in the United States, including via its Internet domain web pages and/or software applications, as well as via its internal systems and interfaces.  Further, and on information and belief, Defendant has directly infringed by using the infringing Accused Instrumentalities as part of its ongoing and regular testing and/or internal legal compliance activities.  Such testing and/or legal compliance necessarily requires Defendant to make and use the Accused Instrumentalities in an infringing manner.  Still further, Defendant is a direct infringer by virtue of its branding and marketing activities, which collectively comprise the sale and offering for sale of the infringing Accused Instrumentalities.

63. As shown above, Defendant is making, using, and offering for sale the Accused Instrumentalities.

64. Additionally, upon information and belief, Defendant owns, directs, and/or controls the infringing method operation of the Accused Instrumentalities.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

65.  On information and belief, Defendant has a policy or practice against investigating third party patent rights, and its willful blindness qualifies for requisite knowledge of the '743 Patent. *See Estech Sys. IP, LLC v. Carvana, LLC*, No. 2:21-CV-0482-JRG-RSP, 2022 WL 17727752, at \*2 (E.D. Tex. Sept. 26, 2022) (noting such an allegation is sufficient "because it provides fair notice of the allegation and the grounds upon which it rests").

66.  In addition or in the alternative, Defendant now has knowledge and continues these actions and it indirectly infringes by way of inducing direct infringement by others and/or contributing to the infringement by others of the '743 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, infringing services for use in systems that fall within the scope of the claims of the '743 Patent. This includes without limitation, one or more of the Accused Instrumentalities by making, using, importing offering for sale, and/or selling such services, Defendant injured Plaintiff and is thus liable to Plaintiff for infringement of the '743 Patent under 35 U.S.C. § 271.

67.  Now with knowledge of the '743 Patent, Defendant induces infringement under Title 35 U.S.C. § 271(b).  Defendant will have performed actions that induced infringing acts that Defendant knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc*., 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co*., 471 F.3d 1293, 1306 (Fed.Cir.2006) (*en banc* in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co*., 501 F.3d 1307, 1313, (Fed. Cir. 2007).

68. Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

69. Defendant has taken active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused product to be used in an infringing manner. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

70. In addition, on information and belief, and based in part upon the clear infringement by the Accused Instrumentalities, Defendant has a practice of not performing a review of the patent rights of others first for clearance or to assess infringement thereof prior to launching products and services. As such, Defendant has been willfully blind to the patent rights of Plaintiff.

71. The foregoing infringement on the part of Defendant has caused past and ongoing injury to Plaintiff. The specific dollar amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '743 Patent.

72. Each of Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

### COUNT III
### Infringement of U.S. Patent No. 8,406,994

73. Plaintiff incorporates the above paragraphs by reference.

74.　Defendant has been on actual notice of the '994 Patent at least as early as the date it received service of the Original Complaint in this litigation.

75.　Plaintiff or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '994 patent, thus the damages period begins at least as early as six years prior to the date of service of the Original Complaint in this litigation.

76.　Defendant manufactures, sells, offers for sale, owns, directs, and/or controls the operation of the Accused Instrumentalities and generates substantial financial revenues and benefits therefrom.

77.　Defendant has directly infringed and continues to directly infringe the claims of the '994 Patent. As exemplary and described further here https://www.mapbox.com/weather, Claim 1 is infringed by making, using, importing, selling, and/or offering for sale the Accused Instrumentalities. Defendant directly makes and sells the infringing Accused Instrumentalities at least because it is solely responsible for putting the infringing systems into service by directing or controlling the systems as a whole and by obtaining the benefits therefrom.

78.　Further on information and belief, Defendant directly uses the infringing Accused Instrumentalities at least because it assembled the combined infringing elements and makes them collectively available in the United States, including via its Internet domain web pages and/or software applications, as well as via its internal systems and interfaces. Further, and on information and belief, Defendant has directly infringed by using the infringing Accused Instrumentalities as part of its ongoing and regular testing and/or internal legal compliance activities. Such testing and/or legal compliance necessarily requires Defendant to make and use the Accused Instrumentalities in an infringing manner. Still further, Defendant is a direct infringer

by virtue of its branding and marketing activities, which collectively comprise the sale and offering for sale of the infringing Accused Instrumentalities.

79. As shown above, Defendant is making, using, and offering for sale the Accused Instrumentalities.

80. Additionally, upon information and belief, Defendant owns, directs, and/or controls the infringing method operation of the Accused Instrumentalities.

81. On information and belief, the infringement of the '994 Patent by Defendant will now be willful through the filing and service of this Complaint.  The '994 Patent does not expire before May 11, 2031.

82. In addition or in the alternative, Defendant now has knowledge and continues these actions and it indirectly infringes by way of inducing direct infringement by others and/or contributing to the infringement by others of the '994 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, infringing services for use in systems that fall within the scope of the claims of the '994 Patent. This includes without limitation, one or more of the Accused Instrumentalities by making, using, importing offering for sale, and/or selling such services, Defendant injured Plaintiff and is thus liable to Plaintiff for infringement of the '003 Patent under 35 U.S.C. § 271.

83. Now with knowledge of the '994 Patent, Defendant induces infringement under Title 35 U.S.C. § 271(b).  Defendant will have performed actions that induced infringing acts that Defendant knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc*., 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co*., 471 F.3d 1293, 1306 (Fed.Cir.2006) (*en banc* in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct

infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co*., 501 F.3d 1307, 1313, (Fed. Cir. 2007).

84.    Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd*., 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

85.    Defendant has taken active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused product to be used in an infringing manner. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

86.    In addition, on information and belief, and based in part upon the clear infringement by the Accused Instrumentalities, Defendant has a practice of not performing a review of the patent rights of others first for clearance or to assess infringement thereof prior to launching products and services.  As such, Defendant has been willfully blind to the patent rights of Plaintiff.

87.    The foregoing infringement on the part of Defendant has caused past and ongoing injury to Plaintiff.  The specific dollar amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '994 Patent.

88.    Each of Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court enter judgment against Defendant as follows:

1.      Declaring that Defendant has infringed the Patents-in-Suit;

2.      Awarding Plaintiff its damages suffered because of Defendant's infringement of the Patents-in-Suit;

3.      Enter a judgment awarding treble damages pursuant to 35 U.S.C. §284 for Defendant's willful infringement of the Patents-in-Suit;

4.      Awarding Plaintiff its costs, reasonable attorneys' fees, expenses, and interest; and

5.      Granting Plaintiff such further relief as the Court finds appropriate.

**JURY DEMAND**

Plaintiff demands trial by jury, under Fed. R. Civ. P. 38.

Respectfully Submitted

*/s/* Christopher A. Honea
M. Scott Fuller
   Texas Bar No. 24036607
   sfuller@ghiplaw.com
Randall Garteiser
   Texas Bar No. 24038912
   rgarteiser@ghiplaw.com
Christopher A. Honea
   Texas Bar No. 24059967
   chonea@ghiplaw.com

**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420
Facsimile: (903) 405-3999

**ATTORNEYS FOR PLAINTIFF**